STATE of Missouri,
Plaintiff–Respondent,

v.

Carl JAMES, Defendant–Appellant.

Carl JAMES, Movant,

v.

STATE of Missouri, Respondent.

Nos. 56440, 57687.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 12, 1991.

Melinda K. Pendergraph, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant was convicted by a jury of attempted robbery in the first degree, assault in the first degree, and armed criminal action. The trial court sentenced defendant as a prior offender to concurrent terms of 10 years imprisonment for each count. He is appealing both the aforementioned judgment and the judgment which denied his motion to vacate the conviction and sentence under Supreme Court Rule 29.15.[1] The separate appeals were consolidated by this court.

The evidence presented in a light most favorable to the verdict is as follows: on November 26, 1987, Thanksgiving Day, Shawn Tobias (hereinafter Shawn) was driving on Highway 70 in order to deliver some Thanksgiving dinner to his brother Tyrone Tobias (hereinafter Tyrone), who

---

**1.** All references to rules are to Missouri Rules of Court, 1991, unless otherwise noted.

was working that night at a gas station. As he exited the highway, his car stopped functioning on the exit ramp. Shawn flipped on his hazard lights and walked to a nearby service station to call one or more of his brothers for help. After several unsuccessful attempts, Shawn reached Tyrone at work. Tyrone locked up the service station where he was working and left to help his brother. Upon arriving at the site of the crippled vehicle, the two brothers attempted to push the car onto a vacant lot. The two pushed the car most of the distance, but were unable to get the car over a steep hump in the road. At this point, Tyrone asked two men who were walking down the street to help push the car in exchange for a couple of dollars. They agreed to the proposal. One of these men was later identified as the defendant. The four men pushed the car onto the vacant lot. As the car came to a halt, the other stranger immediately left. Shawn began to lock the automobile. At this time, defendant approached him from behind and stated, "Turn around, don't make me kill you. I'll kill you if I have to." Shawn could see defendant was holding a gun in his right hand, and was pointing it at his midsection. Defendant then jabbed the gun into Shawn's rib cage and demanded his money. At this point, Tyrone grabbed defendant from behind and a struggle over the gun ensued. Defendant fired the gun and the bullet struck Tyrone on the right side of his stomach. Together the brothers wrestled defendant to the ground. It took their combined force to keep him there. They also struck defendant several times in an effort to restrain him.

Within the next 20 minutes to one-half hour, the police arrived and arrested defendant and confiscated the weapon. An ambulance arrived and took Tyrone to the hospital for treatment of his gunshot wound.

At trial, during cross-examination, the circuit attorney asked defendant if he was asking the jury to believe that the Tobias brothers were the true aggressors in spite of all the evidence presented against him. Instead of responding directly to the question asked, he injected the fact that the case had previously been dismissed against him because the Tobias brothers failed to appear. This was an accurate statement. The circuit attorney replied, "You don't know that." Defendant replied, "Yes, I do," and the circuit attorney rejoined, "No, you don't sir." At this point the attorneys approached the bench, and defendant's counsel requested a mistrial out of the hearing of the jury, which was denied. The trial court issued an admonishing instruction to the jury to disregard the remarks of both the witness and counsel as immaterial and the trial continued. Defendant was tried and convicted of attempted robbery in the first degree, assault in the first degree, and armed criminal action, which he now appeals.

## POST–CONVICTION FACTS

Defendant-movant timely filed a *pro se* motion for post-conviction relief pursuant to Supreme Court rule 29.15 on April 21, 1989. In this motion, defendant-movant alleged the following: that he received ineffective assistance of counsel in that his attorney failed to request fingerprints be taken from the weapon; that powder burn tests of defendant-movant and the victims were not conducted; that counsel failed to interview and or to subpoena potentially valuable defense witnesses; and that he was denied his Sixth Amendment right to a speedy trial. He also objected to the scarcity of police officers who were at the scene of the incident being called to testify at trial and their apparent lack of knowledge regarding the night's events. Finally, he alleges he was denied a fair trial as photographs showing a bullet wound to his head were "lost" before trial. He contends that the photographs would have corroborated his explanation of what occurred.

Counsel was appointed to represent him on his 29.15 motion. Counsel filed an amended motion on July 5, 1989, that was timely but unverified and thus, was not accepted by the motion court on the authority of *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989). In the amended motion, counsel realleged and reincorporated the entire *pro se* motion. He then went on to elabo-

rate on all of the above objections raised by defendant in the *pro se* motion. There was one additional claim raised for the first time in the amended motion. Defendant asserted he was denied effective assistance of counsel because his trial counsel failed to object to the state's questioning of him on cross-examination about an officer's testimony that she never heard defendant cry out for help. The trial court ruled in limine that the state was not to discuss the point of whether or not the officer heard movant cry for help. As counsel failed to object when the state did indeed pursue this line of questioning, defendant argues that harmful information was conveyed to the jury and he was denied effective assistance of counsel.

An evidentiary hearing was held on the basis of defendant's *pro se* motion only, on September 15 and September 22, 1989. Based on evidence presented at this hearing, the motion court issued lengthy findings of fact and conclusions of law denying defendant's motion. He now appeals the denial of his 29.15 motion.

### DIRECT APPEAL

■ Defendant's first point on appeal is without merit and is denied. Defendant alleges that the trial court erred in denying his motion for mistrial. Defendant claims a mistrial should have been justified in this instance because of the improper comments made by the prosecutor. More specifically, he contends that the prosecutor's response to statements made by him on cross-examination created an impression that he was dishonest and a liar. Defendant contends that this is reversible error because his credibility was a crucial issue in this case. He asserts that the jury's function was to determine whose version of the facts deserved more credence, his or the two complaining witnesses. A review of the colloquy between the defendant and prosecutor simply does not implicate defendant's credibility. The prosecutor's comments did not allege or suggest defendant was a liar.

The remarks made by the prosecutor do not appear to be at all prejudicial. The prosecutor did not say defendant was dis-honest or deceitful or use any other such prejudicial language. He simply said to the defendant, "You don't know that." The defendant repeated, "Yes, I do." The prosecutor responded, "No, you don't sir." These comments simply are not malicious and prejudicial so as to warrant a mistrial, as it is a "drastic remedy."

■ Secondly, defendant cannot claim prejudice in regard to these comments made by the prosecutor in that he is the one who digressed from the line of questioning and interjected this information into the trial. The law seems to be well settled in this area. "[W]here the defendant has injected an issue into the case, the state may be allowed to admit otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue defendant injects." *State v. Lingar,* 726 S.W.2d 728, 734 (Mo. banc 1987). Additionally, a defendant is not in a position to complain about matters brought into the case by his own statements. *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980).

■ If we were to assume that the exchange did implicate the defendant's credibility, it was not prejudicial. The overwhelming evidence was that defendant's guilt was established by the testimony of the victim and an eyewitness. It is well settled that error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong. *State v. Whitely,* 750 S.W.2d 728, 730 (Mo.App.1988); *State v. Bensley,* 731 S.W.2d 255, 257 (Mo.App.1987).

In addition, to remove any hint of prejudice the court sustained defendant's objection and after denying a request for a mistrial, the court issued an admonishing instruction to the jury advising them that what they heard was immaterial and to disregard what they heard.

We said in *State v. Blockton,* 526 S.W.2d 915, 918 (Mo.App.1975), that a declaration of a mistrial is a drastic remedy, utilized only when the prejudicial effect of the error can be removed in no other way. For this reason, the trial judge is given broad discretion as to whether mistrial should be

declared. The trial judge observed the incident and has the better position to observe the magnitude and effect of the error and to gauge the measures necessary to cure it. The appellate court's function is to determine whether, as a matter of law, the trial court abused its discretion to the prejudice of the appellant in refusing to grant a mistrial. *State v. Heather*, 498 S.W.2d 300 (Mo.App.1973); *State v. Raspberry*, 452 S.W.2d 169 (Mo.1970); *State v. Smith*, 431 S.W.2d 74 (Mo.1968). It is not an abuse of discretion to deny a request for a mistrial subsequent to improper remarks by the prosecution to which objections were sustained and admonishing instructions given. *State v. Heather, supra; State v. Kimmins*, 514 S.W.2d 381 (Mo.App.1974); *State v. Robinson*, 516 S.W.2d 40 (Mo.App.1974). Considering the entire record before us, we do not believe the trial court erred in failing to declare a mistrial and defendant's point is denied.

## POST–CONVICTION PROCEEDING

■ Defendant's sole issue on appeal of his post-conviction judgment is that his post-conviction motion counsel was ineffective in that he failed to have the amended motion verified.

The motion court denied the unverified amended motion and held a hearing on the *pro se* motion. After the hearing the court addressed the issues and handed down a thoughtful and lengthy findings of fact and conclusions of law. The court further addressed movant's failure to verify the amended motion and deemed it abandoned citing *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989).

We must reject defendant's claim for we are constrained to follow *Sloan v. State*, 779 S.W.2d 580, 583 (Mo. banc 1989), *cert. denied* — U.S. —, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990) and *Lingar v. State*, 766 S.W.2d 640, 641 (Mo. banc 1989) *cert. denied* — U.S. —, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989). Failure of defendant's

counsel to verify the amended petition is not an issue to be considered in a Rule 29.15 proceeding. The purpose of Rule 29.-15 is to provide a quick and uniform method of post-conviction relief for the convicted. It is not a method through which defendants can attack post-conviction counsel.

Defendant's reliance on *Young v. State*, 724 S.W.2d 326 (Mo.App.1987) is inapplicable because it was decided under Rule 27.-26 which, although almost identical to Rule 29.15, has one significant difference: now there are time limitations. Rule 29.15 has specific and stringent time limitations, and if not complied with, constitutes a complete waiver of one's rights whatever the reason for the non-compliance. Thus, under Rule 27.26, courts had the freedom to remand a claim for a counsel's failure to amend if they so wished. Under Rule 29.15, after *Day v. State*, 770 S.W.2d 692 and its progeny, this is not possible. Once the deadline has passed, all specified rights under Rule 29.15 have been forfeited.

Defendant cites *Parker v. State*, 785 S.W.2d 313 (Mo.App.1990) as authority to reverse the motion court's judgment. In *Parker*, appellant received *no* assistance of counsel, not just ineffective assistance of counsel. The special public defender appointed on Parker's behalf never even entered an appearance. Thus, the *Lingar* [2] rule did not apply in *Parker*. This case was also decided under Rule 27.26(h), not 29.15.

The third case which defendant relies on is *Luster v. State*, 785 S.W.2d 103 (Mo.App. 1990), which does apply Rule 29.15. Defendant in that case was denied an evidentiary hearing although he was entitled to one as he did file a timely, handwritten motion which the trial court overlooked. That case is different in several respects from the case at bar. The court in *Luster* held that where an unamended *pro se* motion has been summarily dismissed, the record

**2.** In *Lingar v. State*, the Supreme Court of Missouri held that "[a] post-conviction proceeding authorized by the rules of this Court is directed to the validity of appellant's conviction and sentence and cannot be used as a conduit to challenge the effectiveness of counsel in the post-conviction proceeding." (Citing *Usher v. State*, 741 S.W.2d 677 (Mo.App.1988)). 766 S.W.2d at 641.

should show that appointed counsel actively participated in the proceedings on movant's behalf. In the case at bar, defendant's *pro se* motion was not "summarily dismissed." To the contrary, he received an evidentiary hearing on his *pro se* motion which lasted two days. The court in *Luster* also averred that legal services had deprived Mr. Luster of any opportunity fully and fairly to litigate his claims for post-conviction relief." 785 S.W.2d at 107.

The facts in *Luster* are different than the case at bar. Defendant's counsel did perform an adequate amount of work on defendant's behalf. His forgetfulness to verify under our Supreme Court decisions cannot be called a "complete failure to supply legal services," unlike *Luster's* counsel, who did nothing. See *Guyton v. State*, 752 S.W.2d 390, 392 (Mo.App.1988). We agree with the *Luster* court in its conclusion that motion counsel must provide a certain level of representation and if counsel "has *totally defaulted* in performing his duties under 29.15(e), it [the court] should appoint new counsel and restart the running of time limitations for amendment." 785 S.W.2d at 107. Whether defendant's counsel's conduct reaches such proportions that the defendant's incarceration is a violation of his fundamental right of liberty is a question we need not answer for we are constrained to follow *Sloan.* Point denied.

We affirm the Rule 29.15 motion court's judgment.

GARY M. GAERTNER, P.J., and CRIST, J., concur.