Norman C. BALLARD, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 43138.

Missouri Court of Appeals,
Western District.

June 18, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Willard B. Bunch, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and SHANGLER, GAITAN and BRECKENRIDGE, JJ.

NUGENT, Presiding Judge.

Movant Norman C. Ballard appeals from the hearing court's denial of his motion for relief under Rule 27.26, Missouri Rules of Criminal Procedure. In his only point on appeal, Mr. Ballard contends that the court erred in not finding that his trial counsel provided ineffective legal assistance and thus erred in denying his motion for a new trial. We affirm the decision of the hearing court.

In 1985, a jury convicted Mr. Ballard and Gary Gray of the torturous murder of Roy Keck, a ninety-two year old St. Joseph man and the trial court sentenced both to life imprisonment. This court affirmed Mr. Ballard's conviction and sentence in an unpublished memorandum decision. *State v. Ballard,* 708 S.W.2d 363 (Mo.App.1986).

The record shows that the two defendants broke into Mr. Keck's house and beat, stabbed and in other ways tortured him to force him to disclose the whereabouts of money that they believed he had. Mr. Keck's daughter found him a day or two later as he lay semi-conscious and nude on the floor. About two weeks later, he died of pneumonia caused by his injuries.

At trial, defendant Ballard's counsel indicated that he would introduce the testimony of Bonnie Weiser, who had made statements exculpating both defendants and inculpating two other men. He claimed that Ms. Weiser knew details of the injuries Mr. Keck had received, details that no news sources had disclosed. To prove this, he called as witnesses reporters and editors who recounted the contents of newspaper articles and television and radio broadcasts about Mr. Keck's murder. He never called Ms. Weiser as a witness. The media witnesses' testimony showed that most, but not all, of the details that Ms. Weiser knew of the murder came from news reports of the Keck murder.

The state introduced a statement by Ms. Weiser, in which she attested that she had lied in her statement exculpating the defendants. In the statement used by the state, she claimed that she falsely inculpated another man simply because he had refused to lend her ten dollars. One prosecution witness, a police officer, testified that the police had discounted Ms. Weiser's statement inculpating the other man because of her general reputation for untruthfulness and for frequent inebriation. In addition, the state called as a rebuttal witness a television news director who testified that his station had broadcast one of the details that Ms. Weiser claimed she learned from Mr. Keck's real killers. Mr. Ballard's trial counsel had at first listed the news director as a witness, but later chose not to call him.

The state's medical witnesses testified to the injuries Mr. Keck had received and that led to his death. Also, a man who drove the defendants to and from Mr. Keck's house the morning of the murder recounted inculpatory statements that they made when they returned to his truck from the house.

In March, 1987, defendant Ballard filed a pro se motion for post-conviction relief under Rule 27.26, which his counsel later amended. At the hearing on his motion Mr. Ballard testified that the gruesome details disclosed by the various media witnesses at his trial prejudiced him in the eyes of the jury.

At a later hearing on the motion, Mr. Ballard's trial counsel testified that he adduced the news reports on the Keck murder to prove that Ms. Weiser could have learned the details that she allegedly knew not from news sources, but only from the real killers. He further testified that he did not call Ms. Weiser because she proved a completely unreliable witness whom the prosecution could have "torn to ribbons ... [without] any great difficulty...." He recounted the difficulties in locating the transient Ms. Weiser. When asked how often she appeared drunk, he responded that more properly one should ask how often she appeared sober. He also testified that Ms. Weiser had appeared terrified during the trial and in fact had died shortly before the later post-conviction hearing.

The hearing court overruled Mr. Ballard's motion, and the defendant filed a timely appeal. Of the many issues raised in his Rule 27.26 motion, Mr. Ballard raises only one on appeal. He argues that trial counsel's failure thoroughly to investigate the contents of the news stories adduced at trial permitted the jurors to hear inflammatory evidence that prejudiced them against him. He further contends that counsel's failure to call Ms. Weiser and the state's calling the news director as a witness rebutting her exculpatory statement caused the jury to believe that his counsel had "been caught in a lie."

■■■ The Supreme Court of Missouri abrogated Rule 27.26 and replaced it with Rule 29.15, effective January 1, 1988. Appellate courts apply the same standard of review of actions brought under the former rule as they do of those brought under the current rule, *Luster v. State,* 785 S.W.2d 103, 106 (Mo.App.1990); *State v. Perez,* 768 S.W.2d 224, 228 (Mo.App.1989). We may reverse the hearing court's decision only if we find it clearly erroneous. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo.1990). An appellate court will deem the hearing court's decision clearly erroneous only if it leaves the reviewing "court with the definite and firm impression that a mistake has

been made." *Id.* The two-pronged test of ineffective assistance of trial counsel requires a movant show that trial counsel's defense fell outside the wide range of available professional assistance and that counsel's ineffectiveness prejudiced the movant. *Id.*

This test mirrors the United States Supreme Court's test for ineffective assistance of counsel established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There, the Court held that a movant must overcome the presumption of effective counsel by showing that the allegedly ineffective assistance did not fall into the protected scope of trial strategy. *Id.* at 689, 104 S.Ct. at 2065. The Court further held that a movant must then demonstrate a reasonable probability that, but for the substandard representation, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ Mr. Ballard's trial counsel's actions fell within the range of trial strategy. Facing a strong case for the state, he had to rely on any existing potentially exculpatory evidence. When apprised of the content of Ms. Weiser's statement exculpating the defendant, he had to rely on a Tobacco Road character: manifestly irresponsible, dishonest, and unreliable. When Ms. Weiser appeared to him too unreliable to put on the witness stand, he resorted to the strategy of introducing evidence of the news stories. He did so again when he called the various media witnesses to prove that she had not gained from news sources the details of the murder that she had related to him.

The fact that the state called as a witness one of the media persons whom trial counsel had originally contacted (and chose not to call because of the content of the testimony) proved an embarrassing episode, but not one that proves ineffective representation. Although trial counsel might have more thoroughly investigated the testimony that all the media witnesses would give, the chance he took in bringing them to the stand to corroborate Ms. Weiser's testimony did not fall below an acceptable standard of representation.

Nor did the media witnesses' testimony in any way prejudice movant Ballard. The jury already had heard medical testimony detailing Mr. Keck's injuries. Further, the man who drove Messrs. Ballard and Gray to Mr. Keck's residence the morning of the murder provided damning evidence against the defendant. The jury had ample evidence even without the media witnesses to convict.

Our review of Mr. Ballard's direct appeal of his conviction led us to conclude that he had received vigorous and thorough defense, which the present review confirms.

For the foregoing reasons, we affirm the judgment of the hearing court.

All concur.